# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

JIMMIE C. MOORE,                )
                                )
         Plaintiff,             )
                                )
v.                              )  Case No. CIV-08-071-FHS
                                )
MICHAEL J. ASTRUE,              )
Commissioner of Social          )
Security Administration,        )
                                )
         Defendant.             )

## REPORT AND RECOMMENDATION

Plaintiff Jimmie C. Moore (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).
2

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on June 25, 1955 and was 52 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant has worked in the past as an oil well service operator and as a short haul truck driver. Claimant alleges an inability to work beginning December 12, 2003 as a result of an on-the-job injury to his back, gout, and high blood pressure.

## Procedural History

On April 4, 2005, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, et seq.) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On July 19, 2007, a hearing was held before ALJ Edward L. Thompson. By decision dated August 31, 2007, the ALJ found that Claimant was disabled during the relevant period alleged. On December 28, 2007, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while certain of Claimant's medical conditions were severe, Claimant did not meet a listing and retained the residual functional capacity to perform light work.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in: (1) finding Claimant retained the RFC to perform light work prior to December of 2004; (2) finding Claimant could perform prolonged standing for light work after December of 2004; and (3) failing to engage in a proper credibility analysis.

**RFC Assessment Prior to December of 2004**

Claimant asserts the ALJ failed to engage in a proper RFC analysis for his condition prior to December of 2004. Claimant suffered a back injury in 1990. In August of 1990, Claimant underwent surgery on his back, resulting in a fusion at L5-S1. (Tr. 350). Dr. R. Stephen Curtis recommended that Claimant not be involved in any job that requires him to lift, squat, climb ladders, "and this sort of activity as the main portion of his job as he has been doing in the past." (Tr. 347).

On December 12, 2003, Claimant re-injured his back and was seen by Dr. Baker Fore. Dr. Fore treated him conservatively with prescription medication and physical therapy. He restricted Claimant to sedentary work. On December 29, 2003, Claimant returned to Dr. Fore with complaints of numbness in his lower extremities and was referred for an MRI of the lumbar spine. After reviewing the MRI, Dr. Fore referred Claimant to a neurosurgeon. On January 15, 2004, Claimant was attended by Dr. Donald Horton who referred him for a repeat MRI. Ultimately, Dr. Horton performed further surgery on Claimant's back on June 22, 2004. Dr. Horton performed a right L2 hemilaminotomy with microscopic discectomy. In July of 2004, Claimant had decreased pain and continued with physical therapy. (Tr. 192-193).

In September of 2004, Claimant underwent a Functional Capacity

Evaluation. Dr. Horton's review of the testing indicated Claimant was permanently restricted to light work with a 20 pound weight lifting restriction. (Tr. 202-203).

Claimant was also evaluated by Dr. Hugh G. McClure, a chiropractic orthopedist. He noted Claimant experienced pain upon palpation along the right paravertebral musculature. He also noted decreased lower extremity muscle testing on the right. Dr. McClure found Claimant continued to experience pain, loss of normal range of motion, loss of strength, and loss of function of the lumbar spine which was expected to be permanent. (Tr. 192-197).

On June 18, 2005, Claimant was evaluated by a consultative examiner, Dr. Baha Abu-Esheh. He noted Claimant still experienced a lot of lower back pain with radiation to the right thigh anteriorally and right let weakness. Claimant had a lot of difficulty standing and walking too long and needed rest between activities due to pain. Dr. Abu-Esheh found Claimant's gait was safe and stable with appropriate speed with slight limping on the right. Claimant did not ambulate with the aid of assistive devices and no identifiable muscle atrophy. Heel to toe walking was performed with difficulty. Tandem gait was also performed with difficulty. (Tr. 317-319).

Claimant also experienced gout in his right ankle beginning in 1998. (Tr. 270-276). He was attended by Dr. Thom B. Leahey, a

rheumatologist, for this condition. Claimant then suffered from gout in his left shoulder in 1999. (Tr. 264-269). In 2002, Claimant also had a flare up of gout in his left ankle. After a month of medication and treatment by Dr. Leahey, the acute flare was resolved and Claimant was pain free. (Tr. 244-245, 247).

On July 28, 2004, Claimant returned to Dr. Leahey because his left foot had been swollen for a month. Claimant was diagnosed with gouty arthritis of the left ankle and Dr. Leahey prescribed a course of Prednesone. (Tr. 227-228). Dr. Horton evaluated Claimant on July 26, 2004. He concluded Claimant's ability to return to work was dependent upon his recovery from his gouty arthritis. (Tr. 206). Claimant's pain was reduced in August of 2004 and his gout was deemed to be stable. (Tr. 223-226). In an April of 2005 visit to Dr. Horton, Claimant's gout remained stable. (Tr. 220).

Evidence appears in the record that Claimant also sought treatment for dermatitis, bronchitis, anemia, obesity, depression, and hypertension. These conditions existed both prior to and after Claimant's alleged onset date. (Tr. 172, 175, 179-185, 156-163223-224, 332).

In his decision, the ALJ determined Claimant suffered from the severe impairments of degenerative disc disease of the lumbar spine, status post two lumbar spine surgeries, gouty arthritis, and

hypertension. (Tr. 18). He found Claimant retained the RFC to perform a limited range of light work. Specifically, the ALJ determined Claimant can occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds, stand and/or walk for 34% to 66% of an 8 hour workday and sit for 34% to 66% of an 8 hour workday. Pushing is limited to 84 pounds and pulling is limited to 66 pounds. He found Claimant's residual functional capacity for light work was diminished by significant non-exertional limitations consisting of postural limitations. The ALJ concluded Claimant can perform kneeling on an entry level basis, perform axial rotations, stooping, and overhead reaching on at least a competitive basis. He found Claimant could not assume the position of crouching, but can constantly balance, and occasionally climb stairs. (Tr. 19).

Claimant first contends the ALJ improperly determined Claimant's RFC was sufficient to allow him to perform light work during the period between December 12, 2003, when Claimant sustained his first back injury, and December 20, 2004, when Dr. Horton allegedly released Claimant for light work.

Claimant's contention is not supported by the record in this case. Dr. Horton released Claimant to perform light work with a 20 pound lifting restriction on September 29, 2004. (Tr. 203). Dr. Horton based this conclusion upon his review of the Functional Capacity Evaluation performed on Claimant. To prevail, it must be

shown in the record that Claimant was disabled for any continuous period of twelve months between the December 12, 2003 and December 20, 2004. 42 U.S.C. § 423(d)(1)(A); Barnhart v. Walton, 535 U.S. 212, 214-215 (2002). This showing has not been made. Therefore, this Court cannot find error in the ALJ's RFC determination during the closed period suggested by Claimant.

Claimant next argues Dr. Horton as a treating source supports a finding of disability during this period. As stated, Dr. Horton was of the opinion Claimant could perform light work prior to December 20, 2004.

Claimant adds that he suffered from a flare of gouty arthritis during this time in his left foot which further restricted his ability to work but was not considered by the ALJ. Again, no indication is present in the record that this condition restricted Claimant's ability to work for a continuous 12 month period. Indeed, the medical evidence supports a finding that this condition resolved itself by October of 2004. (Tr. 224-228).

As an additional subpart of Claimant's RFC argument during this period, he also contends the ALJ failed to consider his obesity in combination with his other impairments during the closed period. An ALJ is required to consider "any additional and cumulative effects" obesity may have upon other conditions from which a claimant suffers, recognizing that obesity combined with

9

other impairments may increase the severity of the condition. Soc. Sec. R. 02-1p. However, as recognized by the Tenth Circuit Court of Appeals, speculation upon the effect of obesity is discouraged.[2] See, Fagan v. Astrue, 2007 WL 1895596, 2 (10th Cir.). No medical evidence is present in the record to indicate Claimant's obesity has restricted his ability to work or exacerbated any other of his alleged impairments. Moreover, as Defendant points out, it does not appear Claimant raised this argument before the ALJ and he should generally be able to rely upon a claimant's counsel to frame the claims such that they are adequately explored. Hawkins v. Chater, 113 kF.3d 1162, 1167 (10th Cir. 1997). The ALJ did not commit error in failing to consider Claimant's obesity.

**Finding as to Claimant's Ability to Perform Prolonged Standing**

Claimant asserts the ALJ erred in finding he could stand for 6 hours in an 8 hour workday for the period after December of 2004. Claimant contends the consultative examiner had found in June of 2005 that Claimant walked with a limp on the right, had difficulty with heel/toe walking, and tandem gait walking. While it is true Dr. Abu-Esheh found these issues during his examination, he did not find Claimant was limited in his ability to walk in relation to working. Dr. Abu-Esheh found Claimant had a safe and stable gait

---

2 "[W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments." Soc. Sec. R. 02-01p.

with appropriate speed and did not need assistive devices to ambulate. Nothing in his findings would indicate the mild conditions he found in Claimant's walking tests would preclude him from walking 6 hours out of an 8 hour day.

### Credibility Analysis

As a final matter, Claimant contends the ALJ's credibility determination is flawed because he failed to consider the effects of Claimant's obesity upon his ability to perform light work. Again, nothing in the record indicates any limitations upon Claimant's ability to work due to obesity.

Claimant also challenges the ALJ's discounting of Claimant's credibility as to pain based upon his daily activities. The ALJ thoroughly discussed the evidence of Claimant's pain and the medical records and testing which objectively contrasted Claimant's claims. It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of

the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3. An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

This Court concurs with the ALJ's evaluation of the credibility of Claimant's statements concerning the level of his pain in light of the objective medical and employment evidence in the record. As noted by the ALJ, Claimant clearly suffers some pain. However, the medical evidence does not support a finding a

debilitating pain. The ALJ adequately cited to medical evidence as well as Claimant's daily activities to form the basis of his opinion on credibility. Accordingly, this Court finds that the ALJ has sufficiently linked references to the evidentiary record with his findings of credibility to satisfy his obligation under this analysis. Thus, this Court finds no error in his evaluation of credibility.

Claimant also makes mention that the ALJ relied on observations outside of the December, 2003 to December, 2004 time period. However, the record indicates the ALJ properly relied upon the totality of the record, including the time period to which Claimant alluded. Consequently, no error may be attributed to consideration of the entire record.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given ten (10) days from the date of the service of these Findings and Recommendations to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Findings and Recommendations within ten (10) days will preclude appellate review

13

of this decision by the District Court based on such findings.

DATED this 22nd day of July, 2009.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE